# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ANESH GUPTA,

                    **Plaintiff,**

v.                                                         Case No:   **6:13-cv-1027-Orl-40KRS**

UNITED STATES ATTORNEY
GENERAL, et al.,

                    **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT (Doc. No. 66)** |
| **FILED:** | **January 26, 2015** |

## I.    PROCEDURAL HISTORY.

On July 5, 2013, Plaintiff Anesh Gupta, representing himself, filed a complaint under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, *et seq.,* the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, against the Attorney General of the United States, the Secretary of the Department of Homeland Security, the United States Citizenship and Immigration Service ("USCIS") and three of its employees.  He seeks a "declaration that the Plaintiff[] has a valid, effective and unrevoked 'Immediate relative of a[] United States Citizen' status," as defined in the Immigration and Nationality Act ("INA") § 201(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i).  Doc. No. 1, at 1, 7.  He alleges that Defendants violated the United States Constitution and federal law in the consideration and denial of a Form

I-130 visa petition filed on his behalf by his wife, Laura Schultz, a United States citizen.   *Id.* at 7-10.

Earlier in this litigation, the Court denied a motion to dismiss filed by Defendants.   Doc. No. 34.   The Court found that it has jurisdiction under the APA to review the final decision denying the *Petition for Alien Relative*, Form I-130 ("Petition") that Ms. Schultz filed on Mr. Gupta's behalf and that Mr. Gupta had standing to bring the present case.   Doc. Nos. 33, 34.   It determined that the Mandamus Act did not apply when, as here, a plaintiff can pursue his claims for relief under the APA.   Doc. No. 33, at 10 n.8, *adopted and approved by* Doc. No. 34.   The Declaratory Judgment Act does not provide an independent basis for exercise of jurisdiction. *Ames v. J.P. Morgan Chase Bank, N.A.*, No. 8:13-cv-806-T-23TGW, 2014 WL 585653, at *4 (M.D. Fla. Feb. 14, 2014).

The Defendants have now filed an amended motion for summary judgment.   Doc. No. 66 ("Motion").   They contend that USCIS appropriately denied the Petition both because Mr. Gupta entered into a marriage with Ms. Schultz to circumvent the immigration laws and because Ms. Schultz abandoned the Petition by failing to respond to a final Notice of Intent to Deny Petition. *Id.*   Defendants filed a certified Record of Administrative Proceedings/Index.   Doc. No. 63 ("Administrative Record").[1]

The Administrative Record includes the final Notice of Intent to Deny Petition for Alien Relative dated November 14, 2012 ("NOID") and the USCIS's final Decision to Deny Petition for Alien Relative dated February 7, 2013 ("Decision to Deny").   R. 1108-20.   Because these documents did not contain citations to the underlying record to support the facts recited therein, I

---

[1]      Pages from the Administrative Record will be cited herein as "R."   The United States filed a page of the Administrative Record that was omitted from the Administrative Record, Doc. No. 72-7, which page will be considered to be part of the Administrative Record, Doc. No. 77, at 10.

required the Defendants to file copies of these documents that included citations to the pages in the Administrative Record where the information and documents referred to in the NOID and Decision to Deny can be found.   Doc. No. 73.   The Defendants filed the annotated NOID and Decision to Deny on April 1, 2015.   Doc. Nos. 74-1, 74-2.

I issued an order advising Mr. Gupta of the evidence he must submit to support his response to the Motion pursuant to *Milburn v. United States*, 734 F.2d 762 (11th Cir. 1984).   Doc. No. 78. I also granted in part Mr. Gupta's belated motion to permit discovery and required Defendants to make Mr. Gupta's alien file ("A-File") available to him for inspection and copying.   Doc. No. 94.

On May 26, 2015, Mr. Gupta filed Plaintiff's Verified Response in Opposition to Defendants' Amended Motion for Summary Judgment ("Response").   Doc. No. 95.   This document is neither sworn to before a notary public or signed under penalty of perjury pursuant to 28 U.S.C. § 1746.   He filed a number of exhibits in support of the Response.   Doc. No. 95-1. Mr. Gupta also filed an Affidavit of Plaintiff, which is signed under penalty of perjury.   Doc. No. 96. He attached exhibits to the affidavit, including a certified mail receipt and a December 7, 2012 letter to USCIS from Mr. Gupta, attached to which was an affidavit of Ms. Schultz.   *Id.*

The Motion has been referred to me for issuance of a Report and Recommendation.

## II.   LEGAL STANDARD.

"Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."   *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("*Preserve*").   The evidence must be viewed in the light most favorable to the non-moving party.   *Id.*

Even in the context of summary judgment, an agency action is entitled to great deference. *Id.* Under the APA, a court shall set aside an action of an administrative agency when it is arbitrary, capricious, or an abuse of discretion or otherwise not in accordance with the law. *Id.*; 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard, a court must consider whether an agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Sierra Club v. Johnson,* 436 F.3d 1269, 1273-74 (11th Cir.2006) (quotation omitted).

The focal point for judicial review of an administrative agency's action is the administrative record. *Preserve,* 87 F.3d at 1246. The reviewing court does not "conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Id.* Instead, the court is "to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

## III.   STATEMENT OF FACTS.

### A.   Summary Judgment Evidence.

When determining whether an I-130 visa petition should be denied, "the USCIS ordinarily cannot give conclusive effect to determinations made in prior proceedings, but should make an independent conclusion based on the evidence of the record." *Diaz v. U.S. Citizenship and Immigration Servs.*, 499 F. App'x 853, 856 (11th Cir. 2012) (per curiam).[2] Therefore, I recommend that the Court not consider as summary judgment evidence findings made in notices of intent to deny the Petition issued before the final NOID was issued unless the record otherwise contains evidence supporting the findings in these earlier notices.

---

[2]       Unpublished decisions of the Eleventh Circuit are cited herein as persuasive authority.

The Court is generally limited to review of information in the administrative record. *Preserve*, 87 F.3d at 1246.   However, the Court may go beyond the administrative record in the following circumstances:   (1) when the agency failed to explain its action, effectively frustrating judicial review; (2) it appears that the agency relied on documents or materials not included in the record; (3) technical terms or complex subjects need to be explained; or, (4) there is a strong showing of agency bad faith or improper behavior.   *Id.* at 1247 n.1 (citing *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988), *amended by* 867 F.2d 1244 (9th Cir. 1989)). Although Defendants invite the Court to review information not in the Administrative Record, they have not established any basis permitting the Court to do so.

   B.      *Bona Fides of the Marriage of Mr. Gupta and Ms. Schultz.*

Mr. Gupta was born in India.   R. 30.   He is a citizen of India.   R. 2.   He entered the United States on December 17, 2001 on a B-2 nonimmigrant visitor visa which permitted Mr. Gupta to stay in the United States until June 16, 2002.   R. 1.

Ms. Schultz is a United States citizen.   R. 25.   She met Mr. Gupta through an online website.   R. 1088.   She married Mr. Gupta on June 4, 2002 in Illinois, within a week after they first met.   R. 21, 136, 1088.

On June 11, 2002, Ms. Schultz, as a U.S. citizen spouse, filed the Petition on behalf of Mr. Gupta.   R. 25-26.   She filed an affidavit in support of the Petition.   R. 34-39.

Mr. Gupta also submitted a Form I-485, *Application to Register Permanent Resident or Adjust Status.*   R. 93-96 ("Application").   USCIS subsequently granted Mr. Gupta employment authorization.   *See, e.g.,* R. 97, 99-107.

In support of the Petition, Mr. Gupta and Ms. Schultz filed a number of documents in an effort to establish the *bona fides* of their marriage.   Records reflect that Mr. Gupta and Ms. Schultz

lived together with Christopher Schultz ("Christopher"), Ms. Schultz's son, from June 2002 to May 2003 in a home owned by Ms. Schultz's father located at 254 Washington Street, Hampshire, Illinois.  R. 148, 152, 155-56, 226.   In an unsworn statement, Christopher stated that his mom introduced Mr. Gupta to him as a friend.   R. 226.   Ms. Schultz testified that she did not tell her son that she was married because she did not want to upset him.   R. 227.

In 2002, Mr. Gupta and Ms. Schultz opened a joint back account.  R. 837.   At the direction of USCIS, Mr. Gupta and Ms. Schultz submitted to USCIS copies of bank statements and canceled checks from their individual accounts and their joint account.   *See, e.g.,* R. 129, 646-900.   A bank statement for the period of May 28 through June 25, 2003 reflects Mr. Gupta's address as 13501 Meadow Creek Drive, Apt. 2712, Orlando, Florida.   R. 651.

On January 27, 2003, Ms. Schultz submitted a form to her employer in which Mr. Gupta agreed that Ms. Schultz's 401(k) plan should be paid to Ms. Schultz or, in the event of her death, to Christopher.   R. 191-92; *accord* R. 193.   On February 10, 2003, Ms. Schultz listed Mr. Gupta for family coverage on her health insurance policy.   R. 137-38, 449-50.   She also listed Mr. Gupta as her spouse and primary beneficiary on her life insurance.   R. 912.

Mr. Gupta and Ms. Schultz submitted unsigned and unverified joint federal income tax returns from 2002 through 2010, R. 40-53, 55-63, 71-74, 78, but no certified record from the IRS of the filing of these returns.   They also submitted joint Illinois income tax returns from 2002 through 2004 and an Illinois tax refund check payable to both Ms. Schultz and Mr. Gupta.   R. 54, 64-68, 75-77.

On February 6, 2003, Mr. Gupta and Susan Stringer signed a joint credit card application. R. 231-32.   Ms. Schultz stated that Ms. Stringer was her friend.   R. 229.

On March 24, 2003, Mr. Gupta and Ms. Schultz bought an automobile titled in both of their names and automobile insurance.   Mr. Gupta made payments on the automobile.   R. 142-44, 298-305, 661, 665, 670, 672, 677, 680, 683, 685.

In April 2003, Mr. Gupta was selected for the Walt Disney World College Program at Walt Disney World, Orlando, Florida.   R. 154.   Mr. Gupta then moved to Florida to work for Disney World.   R. 226.   A letter to Mr. Gupta from USCIS dated June 8, 2004, reflects a handwritten change of address from an Illinois address to Vista Way, 13501 Meadow Creek Dr., Apt. #902, Orlando, Florida.   R. 130.   Mr. Gupta continued to reside at this address as of June 30, 2005.   R. 219.   As of September 26, 2006, Mr. Gupta used an address of 6211—Sabal Palm, 8536 Lake Vista Court, Orlando, Florida.   R. 165.   After his work in the college program ended, *see* R. 255, Mr. Gupta accepted employment at Epcot center, R. 378.   As of September 21, 2011, Mr. Gupta continued to reside in Florida even though he was not employed.   R. 1091.

Ms. Schultz continued to reside and work in Illinois.   *See, e.g.,* R. 23.   Mr. Gupta moved back to Illinois and lived with Ms. Schultz and Christopher at 1102 Todd Farm Drive, Elgin, Illinois from January 2004 through May 2004.   R. 226-27.   He also resided in Illinois with Ms. Schultz and Christopher in May and June 2005.   R. 983-84.   Thereafter, Mr. Gupta visited occasionally, and Ms. Schultz and Christopher visited Mr. Gupta in Orlando.   R. 226.

Nevertheless, Mr. Gupta maintained a record residential address in Illinois.   On May 28, 2003, Ms. Schultz entered into a lease of an apartment at 1102 Todd Farm Drive, # 104, Elgin, Illinois.   R. 157.   On January 16, 2004, Mr. Gupta submitted a change of address to USCIS from 254 Washington Street, Hampshire, Illinois to 1102 Todd Farm Drive, Apartment 104, Elgin, Illinois.   R. 118.   His driver's license issued January 16, 2004 also bears this address.   R. 158.

In May 2004, the Illinois Department of Employment Security mailed a Notice of Telephone Hearing to Mr. Gupta at the Todd Farm Drive address.   R. 206.   On May 27, 2005, Ms. Schultz and Mr. Gupta signed a lease for 177 East Oak Knoll/Route 72, Hampshire, Illinois – Unit B.   R. 166-70.   The lease for this apartment was renewed through April 1, 2009.   R. 172-78.   Sometime before April 2011, Ms. Schultz moved to 1005 Byron Lane, Apt. 4, Elgin, Illinois. R. 57.

Telephone records showed that Mr. Gupta and Ms. Schultz placed calls to each other.   *See, e.g.,* R. 456-511, 554-58, 588-89, 635-42, 918.

In September 2005, Mr. Gupta filed a lawsuit against Walt Disney World Co.   R. 334-39 (referencing Case No. 6:05-CV-1432-Orl-22GJK).   He also filed a complaint with Immigration and Customs Enforcement ("ICE") alleging that Walt Disney World was misusing its Q-1 visas to displace qualified domestic workers.   R. 972.   During that litigation, Mr. Gupta wrote a letter dated September 26, 2006 to opposing counsel in which he asked that they not "drag my wife in this law suit, just for the purpose of harassing her, me and my child."   R. 237.   He stated that his wife had nothing to do with his employment discrimination lawsuit.   He further wrote that he and his wife visited each other only occasionally due to their respective job compulsions and "my child's" school.   *Id.*

On March 6, 2006, Richard T. McGahey, a supervisory special agent with ICE, wrote a memorandum to Mr. Gupta's A-File regarding suspected marriage fraud.   R. 972-73.

C.      *USCIS and ICE Proceedings*.

Ms. Schultz and Mr. Gupta were scheduled for an interview regarding the Application in the USCIS office in Chicago on June 8, 2004.   R. 121.   They both appeared for this interview. R. 96.

On the same day of the interview, USCIS sent a Request for Evidence letter to Mr. Gupta stating that the documentation submitted during the adjustment of status interview was not sufficient to warrant a favorable consideration of the Application.   Mr. Gupta was given eighty-four days from the date of the letter to submit additional evidence.   R. 128.   On August 24, 2004, Mr. Gupta submitted a response with the documents required by USCIS and other documents. R. 133-35 (with list of documents submitted to USCIS contained in the Administrative Record). Thereafter, USCIS continued to process the Application.   *See, e.g.,* 124.[3]

On April 10, 2008, Pauline McGahey,[4] an Adjudications Officer with USCIS, wrote to Ms. Schultz asking for additional information.   R. 978.   Adjudications Officer McGahey told Ms. Schultz that she could withdraw the Petition.   *Id.*   Ms. Schultz responded to the notice on April 30, 2008 with a sworn statement and copy of her Illinois driver's license.   R. 982-85.   She declined to withdraw the Petition.   In her statement, Ms. Schultz wrote that she and Mr. Gupta "married for the first time, because of mutual love, affection and true feelings for each other." R. 983.

On August 18, 2008, USCIS issued a notice to Mr. Gupta and Ms. Schultz to appear at a hearing on the Application.   The hearing was scheduled on September 10, 2008, at the USCIS office in Orlando.   R. 986.   Mr. Gupta wrote a letter to USCIS stating that Ms. Schultz did not intend to come to Orlando for the interview.   He wrote, "[M]y wife has lost interest in pursuing the application."   R. 987.   Handwritten notes of the interview reflect that Mr. Gupta said that he met Ms. Schultz online.   R. 990.   They married within days after meeting, but they did not tell anyone about the marriage.   R. 992.   Mr. Gupta provided addresses and dates when he lived with

---

[3]       An I-485 Processing Worksheet contains a note that an unidentified person spoke with Ms. Schultz's son. The son said that Mr. Gupta is a friend of his mother and that he had never stayed at the house.   R. 124.
[4]       Pauline McGahey is the wife of Richard McGahey.   R. 1052.

Ms. Schultz and Christopher.   R. 991.   Mr. Gupta stated that he and Ms. Schultz tried to buy a

house together.   R. 992.   He provided the place of Ms. Schultz's employment and her cellphone

number.   It appears that Mr. Gupta said that he had last seen Ms. Schultz in August 2008.   During

that visit, he slept in his car.   R. 990.   He had previously visited Ms. Schultz in April.   *Id.*

On September 26, 2008, USCIS issued an appointment notice to Ms. Schultz requiring her

to report to the USCIS office in Orlando on October 31, 2008 to continue processing the Petition.

She was directed to bring evidence of her genuine marriage to Mr. Gupta.   R. 995.   A handwritten

note on the appointment notice reflects that Ms. Shultz appeared on October 31, 2008 at the USCIS

office but that she could not get into the building to be interviewed.   *Id.*   In a later interview by

USCIS, Ms. Schultz stated that she flew down for the interview, stayed at a hotel because Mr.

Gupta was working, returned to the hotel after leaving USCIS and flew home the next day without

spending any time with Mr. Gupta.   R. 1088.   She did not speak to Mr. Gupta on the telephone

until after she had returned to Illinois.   R. 1091.

On June 5, 2009, USCIS issued a Notice of Intent to Deny Visa Petition.   R. 997-1000.

Ms. Schultz was given thirty days from receipt of the document to respond to it in writing with

evidence that her marriage to Mr. Gupta was entered into in good faith.   R. 999.   Ms. Schultz

received the document in the middle of June 2009.   R. 229.

On June 23, 2009, USCIS issued a memorandum stating in relevant part, "Status as a lawful

permanent resident of the United States is accorded:   Anesh Gupta."   R. 119.   In the Remarks

section, the form reads "NS 10/12/05 CR6 spouse of a[] US citizen."   *Id.*

On July 23, 2009, USCIS issued a Decision on Petition for Alien Relative denying the

Petition.   R. 1001-03.   The document advised Ms. Schultz of her right to appeal the decision to

the Board of Immigration Appeals ("BIA").   R. 1002.   Ms. Schultz did not respond.   R. 1051.

On the same date, USCIS denied the Application.   R. 1005.

Special Agent McGahey prepared a Record of Deportable/Inadmissible Alien dated August

6, 2009.   R. 1006-08.   A warrant for Mr. Gupta's arrest was issued by ICE on August 7, 2009.

R. 1014.   An Immigration Judge held a hearing on August 27, 2009, at which Mr. Gupta did not

appear because he had been transferred to another facility.   R. 230, 1051.   Ms. Schultz appeared

at the hearing at the request of the Immigration Judge.   R. 230.   The Immigration Judge released

Mr. Gupta on bond.   R. 1029.   Jorge Lopez, a friend of Mr. Gupta, posted bond.   R. 1016.

Ms. Schultz submitted a sworn declaration to the Immigration Court dated September 16,

2009.   R. 227-30.   She averred that she married Mr. Gupta on June 4, 2002 "because of mutual

love, feeling and care for each other.   Our marriage was entered in good faith and not entered into

for the purpose of procuring my spouse's entry as an immigrant."   R. 227.   She introduced Mr.

Gupta to her father as her boyfriend and sought permission to have Mr. Gupta live with her at her

father's house.   Because she had a twelve-year-old son, she did not know how he would react to

her marriage.   Therefore, she did not tell him that she had gotten married.   *Id.*   She appeared in

Orlando on October 31, 2008, pursuant to a notice to appear from USCIS.   She was not permitted

past the security checkpoint because she had a cellphone.   Eventually, Officer McCormick came

to the lobby and spoke with Ms. Schultz.   Officer McCormick declined Ms. Schultz's request to

come back later in the day.[5]   R. 228-29.

On January 5, 2010, Mr. Gupta later appeared before an Immigration Judge at a hearing.

A removal hearing was scheduled on October 27, 2010.   R. 1051.   The attorney advising USCIS

---

[5]       There is an unsigned declaration of Tracy McCormick in the Administrative Record.   R. 1059-64.   This
document indicates that Ms. McCormick was an Immigration Service Officer for USCIS in Orlando.   R. 1059.

directed USCIS to conduct another I-130 interview.   R. 1053.   The removal hearing was continued six months pending the re-interview.   *Id.*

A merits hearing was held before an Immigration Judge on March 3, 2011.   R. 1053, 1067. During the merits hearing, the Immigration Judge spoke with Ms. Schultz by telephone.   Both Ms. Schultz and Mr. Gupta agreed to appear in Orlando for another interview.   USCIS agreed to reconsider the final decision.   R. 1085.

By letter dated May 2, 2011, Ms. Schultz asked that the proceedings regarding her Petition be transferred to Illinois.   R. 1074.   On August 2, 2011, USCIS transferred the file to the USCIS Chicago office.   R. 1085.

USCIS noticed Mr. Gupta and Ms. Schultz for an interview in Chicago on September 20, 2011.   R. 357.   Ms. Schultz's credit card was used to book travel for Mr. Gupta from Orlando to Chicago in September 2011.   R. 328-31.   At Ms. Schultz's request, the interview was rescheduled to September 21, 2011.   R. 1086.   Both Mr. Gupta and Ms. Schultz appeared for the interview.   R. 1087-92.   Ms. Schultz presented an Illinois driver's license showing her address as 177-B Oak Knoll Drive, P.O. Box 73, Hampshire, Illinois.   R. 23.   Mr. Gupta's address was 124 W. Fillmore Avenue, Orlando, Florida.   *Id.*

There are handwritten notes that appear to have been taken during that interview. R. 1088-92.   Among other things, Ms. Schultz stated that she had not had sexual relations with Mr. Gupta since 2003; Mr. Gupta felt uncomfortable answering the question.   R. 1089, 1091. Ms. Schultz did not recall the last time they kissed.   R. 1092.   Ms. Schultz still had not told her son that she was married.   R. 1088.   She had not worn her wedding ring since 2003.   R. 1089. She considered moving to Florida in about 2008.   *Id.*   In 2009, Mr. Gupta flew to Chicago but slept in his car because he and Ms. Schultz had an argument.   *Id.*   At the time of the interview,

Mr. Gupta did not have any personal belongings at Ms. Schultz's residence other than the backpack he brought with him from Chicago the previous night.   Mr. Gupta did not have a key to Ms. Schultz's residence.  *Id.*  Ms. Schultz and her friend Julie went to Orlando to visit Mr. Gupta from August 31 through September 6.  R. 1090.   During that trip, Mr. Gupta stayed with them some nights at the motel.  *Id.*

Mr. Gupta was also interviewed.   He stated, among other things, that Ms. Schultz considered moving to Florida and that they looked for a house in 2005 or 2006.  R. 1091.  He had told family members that he was married, but not any friends or co-workers.  *Id.*  He never had a wedding ring.  *Id.*  He stayed at his house when Ms. Schultz and her friend visited Florida. *Id.* at 1092.  He had not seen Ms. Schultz's current residence until he came to Chicago for the interview.  He had no personal items at her house.  He had no plans to spend time with Ms. Schultz after the interview.  R. 1092.

On October 24, 2011, USCIS Chicago issued a Notice of Intent to Deny Petition for Alien Relative.  R. 1093-1101.   Based on "dozens of discrepancies," USCIS informed Ms. Schultz of the intent to deny the Petition.  Ms. Schultz was given thirty days to respond.  R. 1101.  In a sworn statement dated February 8, 2012, Ms. Schultz stated that she did not receive any communication from USCIS after the September 21, 2011 interview.  R. 1102.  Based on this statement, USCIS Chicago agreed to reopen the Petition and Application.   R. 1107.

On November 14, 2012, USCIS Chicago issued the final NOID.  R. 1108-17.   The NOID provided a detailed statement of the reasons USCIS decided to deny the Petition.  *Id.*  Once again, USCIS gave Ms. Schultz thirty days to respond.  R. 1117.   On February 7, 2013, USCIS Chicago issued the final Decision to Deny concluding that Ms. Schultz had abandoned the Petition by

failing to respond to the NOID and that the Petition was due to be denied due to marriage fraud. R. 1118-21.   USCIS Chicago also denied the Application.   R. 1122-23.

The Administrative Record contains a letter dated March 5, 2013 in which Mr. Gupta stated that he sent a response to the NOID on December 7, 2012, which was received by USCIS Chicago on December 11, 2012 per the certified mail receipt.   R. 1124-5, 1127.   In his affidavit filed in support of his response to the Motion, Mr. Gupta averred that his response to the NOID included an affidavit of Ms. Schultz dated December 6, 2012.   Doc. No. 96 ¶ 6.   The response to the NOID, including the affidavit of Ms. Schultz, is attached to Mr. Gupta's affidavit as Exhibit 2.   *Id.* at 6-25.   The certified mail receipt showing that the response was delivered to USCIS Chicago on December 11, 2012 is attached as Exhibit 3.   *Id.* at 26.

## IV.   ANALYSIS.

In the Motion, Defendants assert that USCIS correctly denied the Petition because Mr. Gupta and Ms. Schultz failed to provide any compelling evidence of their intent to establish a joint life together as required by the law and because Ms. Schultz abandoned the Petition by failing to timely respond to the NOID.   They argue that Mr. Gupta cannot establish that the actions of USCIS were contrary to the law, regulations or Constitutional protections. In the Response, Mr. Gupta argues that Defendants have not presented a complete Administrative Record, that the Petition was approved in about 2005, and that USCIS violated Ms. Schultz's Fifth Amendment right to due process.   He also asserts that the record is sufficient to show that he and Ms. Schultz did not marry to circumvent the immigration laws.

### A.   *Completeness of the Administrative Record.*

Mr. Gupta argues that the Administrative Record is not complete because it does not contain all of the information in his A-File.   Specifically, he states that a CD of the testimony of

Ms. Schultz before an Immigration Judge was released in another of his lawsuits but that the CD is not included in the Administrative Record filed in this case.   He notes that the Defendants originally filed an administrative record in this case that was not complete, which incomplete record was stricken by the Court.

A proper administrative record should be comprised of those documents that were before the administrative decisionmaker at the time the decision at issue was rendered.   *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012).   An administrative agency is not, however, obligated to include "every potentially relevant document existing within its agency."   *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006).   Rather, the administrative record should consist only of documents considered by the staff prior to the agency action.   *Preserve*, 87 F.3d at 1246 n.2.   "The [agency's] designation of the administrative record is entitled to a presumption of regularity."   *Ga. River Network v. U.S. Army Corps of Eng'rs*, No. 4:10-cv-267, 2012 U.S. Dist. LEXIS 37012, at *11 (S.D. Ga. Mar. 19, 2012), *aff'd* 517 F. App'x 699 (11th Cir. 2013) (per curiam).

Mr. Gupta is correct that the Defendants have had difficulty presenting an Administrative Record that is neither overinclusive nor underinclusive.   For example, the Decision to Deny was issued on February 7, 2013.   R. 1108.   Yet, the Administrative Record contains a declaration of a Supervisory Immigration Services Officer which could not have been considered by the decisionmaker because it was not signed until October 13, 2013, well after the date the Decision to Deny was issued.   R. 1135.   Additionally, as discussed in the order denying Mr. Gupta's motion for contempt, Defendants concede that they omitted one page from the Administrative Record, which they filed separately.   Doc. No. 77, at 9.   However, as also discussed in that order,

Mr. Gupta has not shown that other documents he contends should be in the Administrative Record were considered by the decisionmaker.   *Id.* at 7-9.

While the Court has the discretion to remand a case for further administrative proceedings when the administrative record is overinclusive or underinclusive, it need not do so when the agency's mistake in assembling the administrative record was harmless or without prejudice. *Perry v. Dep't of the Army*, No. 1:12-cv-73(WLS), 2013 WL 4432175, at *5 (M.D. Ga. Aug. 15, 2013) (citing *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 215 (5th Cir. 1979)).   The burden of establishing the possibility of prejudice rests with the plaintiff.   *Id.* (citing *Powers v. U.S. Dep't of Agric.*, No. 5:04-cv-526-Oc-10GRJ, 2006 WL 2735155, at *8 (M.D. Fla. Sept. 25, 2006)). Because the NOID is generally adequately supported by evidence in the Administrative Record, as discussed below, I recommend that the Court find that Defendants' mistakes in assembling the Administrative Record are harmless and that Mr. Gupta has not sustained his burden of showing prejudice.   *But see* fn. 6 *infra.*

> **B.**     *The Administrative Record Does Not Establish That The Petition Was Granted.*

Mr. Gupta relies on a memorandum issued by USCIS contained in the Administrative Record for the proposition that the Petition was approved.   This memorandum, dated June 23, 2009, reads in relevant part, "Status as a lawful permanent resident of the United States is accorded: Anesh Gupta."   R. 119.   In the Remarks section, the form reads "NS 10/12/05 CR6 spouse of [a] US citizen."   *Id.*

The law provides that CR6 status is a conditional permanent resident status for individuals who entered into a marriage with a US citizen within two years of submitting a visa application. 1 Immigr. Law & Defense § 4:50 (2015 ed.).   A person with a conditional permanent resident status and his or her spouse must file a joint petition to have the conditional basis of the status

removed within the ninety days immediately preceding the second anniversary of the date such

status was granted.  If the petition is not timely filed, the conditional permanent resident status

will be terminated automatically.  8 U.S.C. § 1186a(a)(1), (c)(1), (d)(2).

Mr. Gupta has not cited evidence in the record showing that he and Ms. Schultz filed a

joint petition within the required time to have the conditional basis of his permanent resident status

removed.  Therefore, it appears that any conditional permanent resident status terminated

automatically.  Because the termination occurred by operation of law, Mr. Gupta's contention in

the complaint that Defendants acted *ultra vires* in denying the Petition and should be equitably

estopped from denying the Petition is not support by fact or law.

### C.  Denial of the Petition Based on Marriage Fraud.

Congress has defined the process by which a United States citizen may
bring an alien spouse to this country as an immigrant.  8 U.S.C.
§§ 1151(b)(2)(A)(1), 1154.  The Immigration and Nationality Act
("INA"), as amended, delegates the adjudication of immigrant visa petitions
to USCIS to investigate the underlying circumstances of a claimed marital
relationship before conferring immigration benefits.  *See* 8 U.S.C.
§ 1154(b), Pub. Law No. 107-296, § 451(b) (Nov. 25, 2002).  Section
1154(c) bars USCIS from conferring spousal benefits if the alien entered
into a marriage to circumvent the immigration laws.  *See* 8 U.S.C.
§ 1154(c).  USCIS makes this determination in the course of adjudicating
a spousal petition.  *See* 8 C.F.R. § 204.2(a)(1)(ii).  Generally, USCIS's
finding that a marriage was not valid must be based on an independent
review of the record evidence.  *Matter of Tawfik*, 20 I. & N. Dec. 166, 168
(BIA 1990).  That stated, the burden of proof is on the petitioner to
establish eligibility for the benefit sought.  8 U.S.C. § 1361.

*Kazinetz v. USCIS*, No. 12-cv-81078-KAM, 2014 WL 2696575, at *5 (S.D. Fla. June 13, 2014)

(citations omitted).

"In determining whether a beneficiary entered into a fraudulent marriage, '"[t]he central

question is whether the bride and groom intended to establish a life together at the time they were

married."'"  *Diaz*, 499 F. App'x at 856 (alteration in original) (quoting *In re Laureano*, 19 I. &

N. Dec. 1, 2-3 (BIA 1983)).   In making this determination, USCIS considers, among other factors, whether the couple cohabitate, commingle their assets and have shared their lives together. *Kazinetz*, No. 12-cv-81078-KAM, 2014 WL 2696575, at *6.

The final NOID set forth in significant detail the evidence USCIS relied on to conclude that Mr. Gupta and Ms. Schultz did not establish that they intended to establish a life together at the time they were married.   In sum, the decisionmaker found that Mr. Gupta and Ms. Schultz had not lived together except for brief periods after they were married.   R. 1109, 1115.   Indeed, Mr. Gupta did not return to live with Ms. Schultz even when he was no longer employed in Florida. R. 1116-17.

The decisionmaker also found that, except for an initial joint back account, Mr. Gupta and Ms. Schultz did not commingle their finances.   R. 1115.   While they submitted unsigned joint federal income tax returns, they did not provide the requested certification from the IRS that they had filed joint returns.   R. 1112.

Finally, the decisionmaker cited ample evidence supporting her finding that Mr. Gupta and Ms. Schultz did not share their lives together.   This included that Ms. Schultz had never told her son that she was married.   R. 1113.   Additionally, Mr. Gupta and Ms. Schultz did not make plans to spend time together when Mr. Schultz came to Orlando for an interview or when Mr. Gupta came to Illinois for an interview.   R. 1110, 1114-15.   Also, Ms. Shultz had not provided Mr. Gupta a key to her residence, and Mr. Gupta did not keep his personal belongings at her residence. R. 1115.

In light of the deference the Court must give to USCIS's decision, the Decision to Deny the Petition because Mr. Gupta and Ms. Schultz had not established that they intended to share a life together when they married is supported by evidence cited by the decisionmaker that is

contained in the Administrative Record.   Therefore, Mr. Gupta's contention in the complaint that Defendants violated 8 C.F.R. § 103.2(b)(1) by failing to consider evidence is not supported by the record.   I recommend that the Court find that USCIS's decision was based on all relevant facts and that the Decision to Deny the Petition was not a clear error in judgment.   Therefore, the Decision to Deny was not arbitrary, capricious or an abuse of discretion.

> D.    *Denial of the Petition Based on Abandonment.*

USCIS also denied the Petition because Ms. Schultz abandoned it by failing to timely respond to the NOID.   As cited by USCIS, 8 C.F.R. § 103.2(b)(13)(i) provides as follows:   "If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, denied based on the record, or denied for both reasons."   If the Court accepts the recommendation that USCIS's Decision to Deny the Petition based on marriage fraud was not arbitrary, capricious or an abuse of discretion, I recommend that the Court find that it need not resolve the question of whether USCIS's determination that Ms. Schultz abandoned the Petition was arbitrary, capricious or an abuse of discretion.[6]

> E.    *USCIS's Denial of the Petition Was In Accordance With Law.*

While Mr. Gupta raised several legal arguments in his complaint, the only legal issue he asserts in his Response is that Defendants violated Ms. Schultz's right to due process under the Fifth Amendment to the Constitution "by threatening, harassing and abusing [Ms. Schultz], prevent[ing] her from exercising her statutory rights related to the I-130 visa petition, by coercion."

---

[6]    If the Court concludes that it must resolve the issue of abandonment, then I recommend that the Court remand the case to USCIS for consideration of the evidence presented by Mr. Gupta that he and Ms. Schultz timely responded to the NOID.   The record is not sufficiently developed for the Court to determine whether the person who signed the certified mail receipt was an employee of USCIS or whether the document received included Ms. Schultz's December 6, 2012 affidavit.

Doc. No. 95, at 13 (citation omitted).[7]   Assuming, without deciding, that Mr. Gupta has standing to raise this issue on behalf of Ms. Schultz, the Administrative Record does not establish that Ms. Schultz was unable to obtain due process due to any actions of Defendants.   *See Diaz*, 499 F. App'x at 856 (stating in connection with a due process argument that USCIS regulations only require that a petitioner be advised of the derogatory information that will be used to deny the petition and be given the opportunity to respond).   Rather, Ms. Schultz and Mr. Gupta were given ample opportunities to be heard on the Petition.   While Ms. Schultz expressed frustration with the proceedings, she ultimately appeared with Mr. Gupta for an interview at USCIS Chicago in 2011. For these reasons, I recommend that the Court find that Defendants' actions afforded Ms. Schultz all the process she was due and, accordingly, that USCIS acted in accordance with the law.

## V.   RECOMMENDATION.

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** Defendants' Amended Motion for Summary Judgment, Doc. No. 66.

### NOTICE

**Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its**

---

[7]      In the complaint, Mr. Gupta argues that this allegedly improper conduct also violated 8 C.F.R. § 287.8(c)(2)(vii).   The Defendants correctly observe that this regulation governs enforcement activities, not administrative proceedings.

Mr. Gupta also alleged in the complaint that questions asked by USCIS during interviews invaded his right to marital privacy.   "Congress may enact prophylactic measures that might otherwise be unconstitutional when exercising their authority in the area of immigration, so long as the measure is rationally related to a legitimate purpose."   *Almario v. Att'y Gen.*, 872 F.2d 147, 153 (6th Cir. 1988).   "The federal interest at stake here is deterring sham marriages." *Id.* at 152.   Congress, therefore, had a *bona fide* reason for enacting laws that require USCIS to investigate the legitimacy of a marriage of a US citizen and an alien seeking residential status in the United States, even if the means of doing so may infringe on the right to marry and to marital privacy. *Cf. id.* at 151-53 (discussing constitutionality of the law that requires an alien in deportation proceeding who marries a US citizen to leave the United States for two years before USCIS will consider an I-130 visa petition).

**filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.**

Recommended in Orlando, Florida on July 7, 2015.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy