**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ANESH GUPTA,

      Plaintiff,

v.                                                          Case No:  6:13-cv-1027-Orl-40KRS

UNITED STATES ATTORNEY GENERAL,
SECRETARY, DEPARTMENT OF HOMELAND
SECURITY, DIRECTOR, CITIZENSHIP AND
IMMIGRATION SERVICES, UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICE,
FIELD OFFICE DIRECTOR, ORLANDO, USCIS,
and  FIELD  OFFICE  DIRECTOR,  CHICAGO,
USCIS,

      Defendants.

_____

**<u>OMNIBUS ORDER</u>**

This cause comes before the Court on the following matters:

1.  Plaintiff's objections to the Magistrate Judge's April 10, 2015 Order denying Plaintiff's motion for contempt and to the Magistrate Judge's April 10, 2015 Order lifting the Court's stay of the summary judgment deadlines (Doc. 79), filed April 24, 2015;

2.  Plaintiff's objection to the Magistrate Judge's May 5, 2015 Order denying Plaintiff's motion for leave to file motion for compliance (Doc. 85), filed May 7, 2015;

3.  Plaintiff's objection to the Magistrate Judge's May 11, 2015, Order denying Plaintiff's motion to stay (Doc. 88), filed May 12, 2015;

4.  Defendants' Opposition to Plaintiff's Objections (Doc. 89), filed May 13, 2015;

5. Defendants' Amended Motion for Summary Judgment (Doc. 66), filed January 26, 2015;

6. The Magistrate Judge's Report and Recommendation on Defendants' Amended Motion for Summary Judgment (Doc. 97), filed July 7, 2015;

7. Plaintiff's objection to the Magistrate Judge's Report and Recommendation (Doc. 98), filed July 20, 2015; and

8. Defendants' Response to Plaintiff's Objection to Report and Recommendation (Doc. 99), filed August 3, 2015.

## I.   BACKGROUND

### A.   Facts

*Pro se* Plaintiff, Anesh Gupta, was born in India and entered the United States in December 2001 on a B-2 nonimmigrant visitor visa.  (AR 0001, 0030).[1]  Gupta's visa allowed him to stay in the United States until June 16, 2002.  (AR 0001).  On June 4, 2002, Gupta married Laura Schultz,[2] a United States citizen living in Illinois.  (AR 0021). On June 14, 2002, Schultz filed an I-130 Petition for Alien Relative with the United States Citizenship and Immigration Services ("USCIS") on Gupta's behalf (the "I-130 Petition"). (AR 0025–0026).   At the same time, Gupta filed an I-485 Application to Register Permanent Resident or Adjust Status with USCIS (the "I-485 Application").  (AR 0093– 0096).[3]

---

[1]   The Administrative Record in this case (Docs. 63 through 63-13 and Doc. 72-7) will be cited as (AR ####).

[2]   Schultz is not a party to this lawsuit.

[3]   Gupta obtained an Employment Authorization Document, which allowed him to work in the United States while his I-485 Application remained pending.  (*See* AR 0092).

On June 6, 2004, Gupta and Schultz appeared for an interview on Gupta's I-485 Application at USCIS's Chicago office.  (AR 0121).  After the interview, the immigration officer harbored doubts about the validity of Gupta and Schultz' marriage; consequently, USCIS issued a Request for Evidence to Gupta, asking him to produce certain documents to help establish that his marriage to Schultz was valid at its inception.  (AR 0126–0129). The immigration officer also placed a call to Schultz' home to further discuss the marriage. Schultz' teenage son ultimately answered the call and informed the immigration officer that Gupta was a family friend and that his mother was not married.  (AR 0997).

USCIS then scheduled an interview in Orlando on Schultz' I-130 Petition. (AR 0978).  In response, Gupta mailed USCIS to advise that Schultz no longer wanted to pursue the I-130 Petition, but that he wished to attend the interview and move forward with his I-485 Application without her.  (AR 0987–0988).  On September 10, 2008, Gupta appeared and completed the interview with an immigration officer.  (AR 0990–0992). Thereafter, USCIS scheduled a second interview in Orlando in order to give Schultz another opportunity to attend.  (AR 0995–0996).  On October 31, 2008, a woman claiming to be Shultz appeared for the interview, but was not allowed to enter the building because she could not produce identification.  (AR 0998).

On June 5, 2009, USCIS issued a Notice of Intent to Deny Schultz' I-130 Petition (the "NOID").  (AR 0997–1000).  In the NOID, USCIS advised Schultz that it believed she and Gupta entered into their marriage for the purpose of circumventing the immigration laws of the United States.  (AR 0997–0998).  The NOID outlined USCIS's reasons for this belief and offered Schultz thirty days to respond in writing to demonstrate that her marriage to Gupta was bona fide.  (AR 0999–1000).  Schultz never responded to the

NOID.  As a result, USCIS denied Schultz' I-130 Petition and Gupta's accompanying I-485 Application.  (AR 1001–1005).

Because Gupta was no longer allowed to lawfully remain in the United States, the U.S. Department of Homeland Security initiated removal proceedings.  (AR 1009–1011).  During the removal process, the Immigration Judge asked USCIS to reconsider its denial of the I-130 Petition and I-485 Application based on new documents that were unavailable at the time of USCIS's decision.  (AR 1076).  USCIS agreed, accepted the new documents, and scheduled another interview for Schultz and Gupta to prove that their marriage was bona fide at its inception.  (AR 1076–1077, 1095).

After numerous reschedulings, Gupta and Schultz appeared for the interview at USCIS's Chicago office on September 21, 2011.  (AR 1086–1092).  After the interview, the immigration officer issued another NOID to Schultz, again detailing USCIS's position that it believed Gupta and Schultz married for the purpose of circumventing U.S. immigration laws.  (AR 1093–1101).  The NOID afforded Schultz thirty days to respond in writing to demonstrate that her marriage to Gupta was bona fide.  (AR 1101).  USCIS subsequently re-issued the NOID on November 14, 2012 after it received correspondence from Schultz indicating that her address had changed.[4]  (AR 1107, 1108–1117).  Shultz ultimately did not respond to the re-issued NOID either.  As a result, USCIS denied Schultz' I-130 Petition and Gupta's I-485 Application on February 7, 2013.  (AR 1118).

### B.    Procedural History

Representing himself, Gupta initiated this lawsuit on July 5, 2013 by filing a seven-count Complaint.  (Doc. 1).  Gupta seeks a declaration from the Court that he holds "a

---

[4]    USCIS also mailed the re-issued NOID to Gupta.  (AR 1108).

valid, effective and unrevoked 'Immediate relative of a[] United States Citizen' status as the spouse of a United States Citizen." (*Id.* at p. 1). Gupta also seeks review of USCIS's decision to deny the I-130 Petition and accompanying I-485 Application under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and claims that Defendants violated his and Schultz' procedural and substantive due process rights through USCIS's decision.

On January 26, 2015, Defendants filed their Amended Motion for Summary Judgment, in which they seek affirmance of USCIS's decision to deny the I-130 Petition and I-485 Application. (Doc. 66). Gupta responded on May 26, 2015. (Docs. 95, 96). Thereafter, Magistrate Judge Karla R. Spaulding issued a report on July 7, 2015, recommending that Defendants' Amended Motion for Summary Judgment be granted and USCIS's decision be affirmed. (Doc. 97). The Magistrate Judge's Report and Recommendation is now before the undersigned for review, along with a number of other non-dispositive orders entered by the Magistrate Judge in this case.

## II.    STANDARD OF REVIEW

A district judge may designate a magistrate judge to hear and determine both dispositive and non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a), (b). When a magistrate judge decides a matter that is dispositive in nature, the magistrate judge must issue a report to the district judge specifying the magistrate judge's proposed findings of fact and the recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). This reporting requirement, however, is not necessary for non-dispositive matters. *See* Fed. R. Civ. P. 72(a).

Regardless of whether a magistrate judge rules on a dispositive or a non-dispositive matter, any party who disagrees with the magistrate judge's decision has fourteen days from the date of the decision to object to those specific portions of the

decision disagreed with.  Fed. R. Civ. P. 72(a), (b)(2).  When objection is made to the decision of a dispositive matter, the district judge must make a de novo determination of each issue objected to.  Fed. R. Civ. P. 72(b)(3).  De novo review "require[s] independent consideration of factual issues based on the record."  *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (per curiam).  The district judge may accept, reject, or modify, in whole or in part, the report of the magistrate judge or recommit the matter to the magistrate judge with further instructions.  Fed. R. Civ. P. 72(b)(3).

When objection is made to the decision of a non-dispositive matter, however, the district judge need only review the magistrate judge's decision for clear error.  Fed. R. Civ. P. 72(a).  In reviewing the decision, the district judge affords the magistrate judge considerable deference and will only set aside those portions of the decision that are contrary to law or that, upon review of the entire record, leave the district judge "with the definite and firm conviction that a mistake has been committed."  *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  Importantly, the question for the district judge is not whether the magistrate judge's decision is "the best or only conclusion that can be drawn from the evidence, or whether it is the one which the [district judge] would draw," but rather whether the magistrate judge's decision is reasonable and supported by evidence in the record.  *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985), *cert. denied*, 475 U.S. 1019 (1986).

## III.   DISCUSSION

### A.   Gupta's Objections to April 10, 2015 Orders

On January 26, 2015, Gupta filed a motion for contempt against Defendants, claiming that they had violated a court order requiring Defendants to file a complete Administrative Record in this action.  (Doc. 67).  On April 10, 2015, the Magistrate Judge

entered an order denying Gupta's motion for contempt.  (Doc. 77).  Because the Magistrate Judge found that the Administrative Record was complete, she also entered a separate order on April 10, 2015 lifting a previously entered stay of the summary judgment deadlines.  (Doc. 78).

Gupta objects to both orders, which the undersigned reviews for clear error.  *See* Fed. R. Civ. P. 72(a).  Gupta raises the following four specific objections: (1) the Magistrate Judge erred by finding that the Administrative Record designated by Defendants is complete, (2) the Magistrate Judge erred by finding that the Administrative Record is entitled to a presumption of regularity, (3) the Magistrate Judge erred by finding that Gupta failed to overcome the presumption of regularity, and (4) the Magistrate Judge erred when she lifted the stay on summary judgment deadlines based on her erroneous findings that the Administrative Record was complete.  (Doc. 79).

As the Magistrate Judge correctly outlined in her order on Gupta's motion for contempt, judicial review of agency action is ordinarily limited to the Administrative Record, which consists of those documents that were before the decision-maker at the time the disputed decision was made.  *See* 5 U.S.C. § 706; *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007), *cert. denied*, 552 U.S. 1097 (2008).  It is not necessary for the agency to assemble an Administrative Record composed of all documents that could conceivably relate to its decision; the agency need only compile those records which it directly or indirectly considered in its decision-making process.  *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.2 (11th Cir. 1996); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993).  The agency's designation of the Administrative Record is

entitled to a presumption of regularity, which can only be rebutted by "clear evidence to the contrary" that the record was not properly designated.  *Yuetter*, 994 F.2d at 740.

Here, the Magistrate Judge determined that Defendants compiled a complete Administrative Record that consisted of all documents USCIS directly and indirectly considered in making its decision to deny Schultz' I-130 Petition and Gupta's I-485 Application.[5]  The Magistrate Judge rejected Gupta's argument that the Administrative Record was clearly incomplete because Defendants failed to incorporate Gupta's entire immigration file, despite the fact that parts of the immigration file were included.  On this issue, the Magistrate Judge specifically found that Gupta failed to show that Defendants actually considered—either directly or indirectly—the missing documents Gupta lists in his motion.  (Doc. 77, pp. 7–8).  Indeed, upon review of Gupta's motion for contempt, while he cites a number of documents that do not appear in the Administrative Record, Gupta never shows that Defendants considered these records in their decision-making process.  (*See* Doc. 67).  The Magistrate Judge's conclusions that Gupta failed to overcome the presumption of regularity and that Defendants designated a complete Administrative Record was therefore reasonable and in accordance with the law.

Because the Magistrate Judge's decision that Defendants designated a complete Administrative Record is not clearly erroneous, it was similarly reasonable for the Magistrate Judge to lift the stay on summary judgment deadlines.  *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009)

---

[5]   The Magistrate Judge did find that Defendants failed to include in the Administrative Record a single page of a letter Gupta wrote to President Barack Obama.  However, she found that the page was omitted inadvertently due to a copying error and that this error was quickly remedied.  This deficiency therefore did not impact the Magistrate Judge's conclusions that the Administrative Record designated by Defendants was complete or that Defendants disobeyed a court order.  (Doc. 77, p. 9).

("A district court has inherent authority to manage its own docket so as to achieve the orderly and expeditious disposition of cases."). Accordingly, Gupta's objections to the Magistrate Judge's April 10, 2015 orders will be overruled.

### B.   Gupta's Objection to May 5, 2015 Order

On May 4, 2015, Gupta filed a "Motion for Leave to File Motion for Compliance of this Honorable Court's Order," in which he requested that the Court order Defendants to file his entire immigration file in the Administrative Record. (Doc. 83). On May 5, 2015, the Magistrate Judge entered an order denying Gupta's motion, again finding that Gupta failed to overcome the presumption that the Administrative Record Defendants designated is the complete record USCIS considered in rendering its decision to deny Schultz' I-130 Petition and Gupta's I-485 Application. (Doc. 84).

Gupta objects to the order, which the undersigned reviews for clear error. *See* Fed. R. Civ. P. 72(a). Gupta specifically objects to the Magistrate Judge's finding that Defendants designated a complete Administrative Record. (Doc. 85). Similar to the objection discussed in Section III.A, *supra*, Gupta contends that, although Defendants relied on certain documents in his immigration file, they failed to designate the entire immigration file for the Court's review. (*Id.* ¶¶ 4–7).

However, an agency need not designate every conceivable document relating to its decision, but only those documents it directly or indirectly considered in its decision-making process. *Preserve Endangered Areas of Cobb's History*, 87 F.3d at 1246 n.2; *Yuetter*, 994 F.2d at 739. The Magistrate Judge determined that Gupta failed to show that Defendants actually considered any of the documents Gupta cited in his motion, thus failing to overcome the Administrative Record's presumptive regularity. (Doc. 84, pp. 2–3). Indeed, Gupta's motion again relies on the unsupported assertion that Defendants

should have filed Gupta's entire immigration file since some documents within the immigration file were included in the Administrative Record.  (*See* Doc. 83).  Because this is not what the law requires, the Magistrate Judge's decision is reasonable and Gupta's objection to the May 5, 2015 order will be overruled.

### C.   Gupta's Objection to May 11, 2015 Order

On May 8, 2015, Gupta moved to stay the Court's revised scheduling order pending the undersigned's resolution of the objections discussed in Sections III.A and III.B, *supra*.  (Doc. 86).  On May 11, 2015, the Magistrate Judge entered an order denying Gupta's motion, finding that the Court has the inherent authority to manage its own docket and that a party may not rely on the filing of a motion or other paper as a basis for staying a deadline.  (Doc. 87, p. 2).

Gupta objects to the order, which the undersigned reviews for clear error.  *See* Fed. R. Civ. P. 72(a).  Gupta specifically maintains that the Magistrate Judge erred in denying his motion to stay because Gupta would be prejudiced in responding to Defendants' amended motion for summary judgment without resolution of the pending objections—which were based on Gupta's allegations that Defendants had failed to designate a complete Administrative Record in this matter.  (Doc. 88, ¶¶ 9–13).

"A district court has inherent authority to manage its own docket so as to achieve the orderly and expeditious disposition of cases."  *Equity Lifestyle Props.*, 556 F.3d at 1240.  Here, the Magistrate Judge noted that the Court had previously stayed the summary judgment deadlines pending its resolution of whether Defendants had filed a complete Administrative Record.  (Doc. 87, pp. 1–2).  The Magistrate Judge resolved this issue at least twice, finding that Defendants in fact designated a complete Administrative Record.  Upon lifting the stay, the Magistrate Judge additionally warned the parties that

any further stay or extension of time regarding summary judgment briefing would be unlikely.  (Doc. 78, p. 2).  Because of the age of this case, the Magistrate Judge decided to adhere to her warning.  (Doc. 87, p. 2).

The Court finds the Magistrate Judge's determination that the stay should be lifted despite Gupta's pending objections to be reasonable and in accordance with the law. Gupta's objections had a low probability of success considering that the Magistrate Judge carefully reviewed the completeness of the Administrative Record multiple times. Moreover, even if Gupta had succeeded on either objection, the undersigned could have easily remedied the matter by allowing additional briefing on summary judgment; therefore, there was no real prejudice to Gupta by the Magistrate Judge lifting the stay. Finally, the Magistrate Judge afforded all parties ample warning that the summary judgment deadlines would not likely be moved again.   For these reasons, Gupta's objection to the May 11, 2015 order will be overruled.

### D.    Gupta's Objection to July 7, 2015 Report and Recommendation

On January 26, 2015, Defendants filed their Amended Motion for Summary Judgment.  (Doc. 66).  On July 7, 2015, the Magistrate Judge issued a report to the undersigned recommending that the motion be granted.  (Doc. 97).  Of significance, the Magistrate Judge found that USCIS's decision to deny Schultz' I-130 Petition and Gupta's I-485 Application based on marriage fraud was not arbitrary, capricious, or contrary to law.  (*Id.* at pp. 17–19).   Gupta objects to the Magistrate Judge's Report and Recommendation.  (Doc. 98)  The undersigned reviews de novo those portions of the report to which Gupta objects.  *See* Fed. R. Civ. P. 72(b)(3).

### 1.   Legal Standards on Summary Judgment[6]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*  In determining whether a genuine dispute of material fact exists, the Court must read the record and the evidence presented in the light most favorable to the non-moving party. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006), *cert. denied*, 549 U.S. 996 (2006).  Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court reviews USCIS's final decision to deny Schultz' I-130 Petition and Gupta's I-485 Application under the "arbitrary and capricious" standard. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1216 (11th Cir. 2002).  Under this standard, the Court only sets aside an agency's decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or where the decision is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Napolitano*, 391 F. App'x 346, 350 (5th Cir. 2010) (per curiam).  An agency's decision is presumed valid until proven otherwise. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th

---

[6]   To the extent Gupta objects to the standard of review employed on summary judgment (*see* Doc. 98, p. 12), his objection is overruled.

Cir. 2009), *cert. denied*, 561 U.S. 1051 (2010).  As such, the Court's review of an agency's decision is "exceedingly deferential."  *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008).

### 2.    The Magistrate Judge's Authority to Enter the Report

Gupta's first objection claims that the Magistrate Judge lacked authority to enter the Report and Recommendation because she lacked authority to enter the April 10, 2015 Order denying Gupta's motion for contempt.  (Doc. 98, pp. 2–3).  Gupta contends that a motion for contempt is a dispositive matter which requires the issuance of a report and, since the Magistrate Judge did not issue a report on his motion for contempt, the order resolving the motion was entered without authority.  Gupta goes on to extrapolate this logic to conclude that, since the Magistrate Judge lacked authority to resolve his motion for contempt, she also lacked authority to lift the stay on summary judgment deadlines, lacked authority to deny his "Motion for Leave to File Motion for Compliance of this Honorable Court's Order," lacked authority to deny his motion to stay the revised scheduling order, and lacked authority to issue the instant Report and Recommendation.

To begin, Gupta failed to raise any issue with the Magistrate Judge's authority to resolve his motion for contempt when he originally objected.  (*See* Doc. 79).  The objection Gupta raises now is therefore untimely and deemed waived.  *See Johnson v. Colvin*, No. 3:14-cv-760-J-34JRK, 2015 WL 4694053, at *1 n.1 (M.D. Fla. Aug. 6, 2015).  Moreover, even if Gupta's objection were timely, Gupta's take on the law is incorrect.  A dispositive motion is a motion which, if decided in the movant's favor, would dispose of a party's claim or defense.  *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993).  Because Gupta's motion for contempt, if granted, would not have resolved any claim or defense in this case, it was non-dispositive in nature and did not require the issuance of a report.

The Magistrate Judge therefore had authority to resolve the motion for contempt and Gupta's first objection will be overruled.

### 3.     The Completeness of the Administrative Record

Gupta next objects on the grounds that Defendants have failed to designate a complete Administrative Record in this case, in violation of both the law and this Court's prior orders.  (Doc. 98, pp. 3–5).  Gupta raises the same arguments discussed previously in Sections III.A and III.B, *supra*—namely, that Defendants failed to include Gupta's entire immigration file in the Administrative Record.

Judicial review of agency action is ordinarily limited to the Administrative Record, which consists of those documents that were before the decision-maker at the time the disputed decision was made.  *See* 5 U.S.C. § 706; *Kempthorne*, 477 F.3d at 1262.  It is not necessary for the agency to assemble an Administrative Record composed of all documents that could conceivably relate to its decision; the agency need only compile those records which it directly or indirectly considered in its decision-making process. *Preserve Endangered Areas of Cobb's History*, 87 F.3d at 1246 n.2; *Yuetter*, 994 F.2d at 739.  The agency's designation of the Administrative Record is entitled to a presumption of regularity, which can only be rebutted by "clear evidence to the contrary" that the record was not properly designated.  *Yuetter*, 994 F.2d at 740.

Upon a de novo review of the Administrative Record designated by Defendants and the arguments raised by Gupta in his response to Defendants' Amended Motion for Summary Judgment, the Court finds that Gupta has failed to rebut the presumption of regularity afforded to the Administrative Record.  While it is true that Defendants have not designated Gupta's entire immigration file, there is no legal reason which requires them to do so.  All Defendants are required to designate are those documents which USCIS

directly or indirectly considered in forming its decision to deny Schultz' I-130 Petition and Gupta's I-485 Application.  Presumably, USCIS only considered those parts of Gupta's immigration file which Defendants included in the Administrative Record.  Gupta does not point to any other part of the immigration file that was considered but not included in the Administrative Record; instead, Gupta maintains that USCIS's consideration of any portion of his immigration file necessitates the designation of the entire file.  Because this is not what the law requires, Gupta's second objection will be overruled.

### 4. Whether USCIS is Equitably Estopped from Denying Schultz' I-130 Petition and Gupta's I-485 Application

For his third objection, Gupta submits that USCIS is equitably estopped from denying Schultz' I-130 Petition and his I-485 Application because USCIS previously granted Gupta permanent resident status.  (Doc. 98, pp. 5–7).  Gupta points to a Form I-181 that was a part of his immigration file, which indicates in boilerplate language that "[s]tatus as a lawful permanent resident of the United States is accorded:", and then lists Gupta's name in the following field.  (AR 0119).  Gupta contends that this document confirms that USCIS has already granted him permanent resident status.

However, Gupta fails to mention the remainder of the Form I-181 to which he cites, particularly the large stamp in the form's "date of action" field indicating that Gupta's status as a permanent resident was "DENIED" on July 23, 2009.  (AR 0119).  The Form I-181 further reveals that Gupta was only granted conditional resident status pending the filing of a joint petition by him and Schultz to remove the conditional status.  (*Id.*); *see also* 8 U.S.C. § 1186a(c)(1).  Gupta does not dispute that he and Schultz never filed the joint petition to remove his conditional resident status; accordingly, the Form I-181 was denied. *See id.* §§ 1186a(a)(1), (c)(1), (d)(2).  Gupta's third objection will therefore be overruled.

15

### 5.    USCIS's Reason for Denying Schultz' I-130 Petition

Gupta's fourth objection contends that USCIS did not deny Schultz' I-130 Petition and his I-485 Application based on marriage fraud, but only on the grounds that Schultz abandoned her petition.  (Doc. 98, p. 7).  Gupta points to USCIS's February 7, 2013 final decision letter, which explains that USCIS denied Schultz' I-130 Petition, in part, because she failed to respond to the NOID.  (AR 1119–1120).  Gupta therefore concludes that any analysis of USCIS's final decision should be limited to the issue of abandonment.

Upon a de novo review of the Administrative Record and the parties' respective summary judgment briefs, the Court concludes that USCIS denied Schultz' I-130 Petition and Gupta's I-485 Application for both marriage fraud and abandonment.  There is no dispute among the parties that USCIS based its final decision to deny Schultz' I-130 Petition on her failure to respond to the NOID.  (AR 1119; Doc. 95, p. 13).  However, USCIS's final decision letter also cites 8 C.F.R. § 103.2(b)(12) as a basis for its decision. (AR 1118).  That regulation provides, in pertinent part, that an I-130 petition "shall be denied where evidence submitted in response to a request for evidence does not establish filing eligibility at the time the [I-130 petition] was filed."  8 C.F.R. § 103.2(b)(12). In the context of this case, the "eligibility" to which § 103.2(b)(12) refers is the bona fide nature of any marriage which serves as the basis for an I-130 Petition for Alien Relative. *See* 8 U.S.C. § 1154(c) (requiring USCIS to deny any I-130 petition based on marriage fraud).  Therefore, § 103.2(b)(12) requires USCIS to deny any I-130 petition where it determines that the U.S. citizen petitioner fails to demonstrate an eligible, bona fide, non-fraudulent marriage to the alien beneficiary spouse.  Because USCIS's final decision letter relies on § 103.2(b)(12) as one of the reasons for denying Schultz's I-130 Petition, and

USCIS fully informed both Schultz and Gupta numerous times that it intended to deny the petition based on marriage fraud, Gupta's fourth objection will be overruled.

### 6.      Whether Gupta's Marriage was Bona Fide

Gupta's fifth objection asserts that his marriage to Schultz was bona fide at its inception and that USCIS erred in denying Schultz' I-130 Petition and his accompanying I-485 Application based on marriage fraud.  (Doc. 98, pp. 12–14).

A United States citizen who seeks permanent resident status for her alien spouse may file an I-130 petition on her alien spouse's behalf.  *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154.  After investigation and a determination that the facts stated in the petition are true, the petition will be granted.  *Id.* § 1154(b).  However, an I-130 petition must be denied where the U.S. citizen and alien spouse entered into their marriage "for the primary purpose of circumventing immigration laws, referred to as a fraudulent or sham marriage." *Rivera v. Patterson*, No. 10-23556-Civ, 2011 WL 5525356, at *3 (S.D. Fla. Nov. 14, 2011).

In determining whether a marriage is fraudulent, "[t]he central question is whether the bride and groom intended to establish a life together at the time they were married." *Diaz v. U.S. Citizenship & Immigration Servs.*, 499 F. App'x 853, 856 (11th Cir. 2012) (per curiam).  Evidence to consider in answering this question includes whether a wedding ceremony occurred, proof of cohabitation, comingling of assets, a history of shared experiences, testimony regarding the couple's courtship, and any other evidence indicating that the couple shared their lives together.  *See id.*; *Kazinetz v. U.S. Citizenship & Immigration Servs.*, No. 12-cv-81075-KAM, 2014 WL 2696575, at *6 (S.D. Fla. June 13, 2014).  If doubt arises regarding the validity of a marriage, it is the U.S. citizen petitioner's burden to demonstrate that the marriage was valid and bona fide at the time it was entered.  *Velez-Duenas v. Swacina*, 875 F. Supp. 2d 1372, 1378 (S.D. Fla. 2012).

Upon review of the evidence considered by USCIS, the Court finds no reason to disturb USCIS's determination that Schultz failed to carry her burden of establishing the bona fides of her marriage to Gupta.  USCIS based its conclusion, in part, on the following facts:

- Gupta and Schultz married in 2002 (AR 0021);

- Schultz and Gupta testified at interviews with USCIS that they met in an online chatroom, moved in together, and married within the same week;

- In 2004, USCIS placed a call to Schultz' home, during which Schultz' teenage son informed USCIS that Gupta was a family friend, that Gupta had never resided at any address with Schultz, and that Schultz was not married;[7]

- Schultz and Gupta opened a joint Bank of America checking account, but the addresses listed for Schultz and Gupta were different;

- Schultz testified at an interview with USCIS that she had no knowledge of Gupta's ongoing legal disputes with his employer;

- In 2003, Gupta filled out a joint credit application with a friend, not Schultz;[8]

- Gupta testified at an interview with USCIS that whenever he visited Schultz he usually stayed at a hotel or slept in his car;

- A woman purporting to be Schultz attempted to appear for an interview with USCIS in Orlando, but was denied entry because she could not produce identification, despite her claim that she had just flown to Orlando from Chicago;

---

[7]   Gupta claims in his objection that he has evidence proving that this telephone conversation never took place.  (Doc. 98, p. 10).  However, Gupta has not produced this evidence for the undersigned's review.

[8]   Gupta submits that the Court should ignore the joint credit application because there is no evidence that the application was ever submitted.  (*Id.*).  The undersigned finds such a distinction irrelevant for purposes of the undersigned's current review.

- At separate interviews with USCIS, Schultz testified that she and Gupta had planned to purchase a home in Florida in 2008, yet Gupta testified that the purchase was planned for 2005;

- Schultz testified at an interview with USCIS that, even after approximately nine years of marriage, she had not informed any of her family that she was married to Gupta;

- Schultz testified at an interview with USCIS that she has never met any of Gupta's friends;

- Schultz testified at an interview with USCIS in Orlando that she was staying at a hotel, had no plans to visit or speak with Gupta while she was in Orlando, and intended to return to Chicago the next day;

- Schultz testified at an interview with USCIS that she has not worn her wedding ring since at least 2003;

- Schultz testified at an interview with USCIS that she and Gupta had not shared a joint bank account since at least 2004;

- When Gupta was detained during removal proceedings, Schultz did not pay Gupta's $5,000 bond, despite her ability to do so;

- Schultz stated in front of a witnessing immigration officer that, over the course of their approximate nine year marriage, she and Gupta had engaged in intimate contact no more than three times; and

- Schultz testified at an interview with USCIS that she instructed Gupta "not to tell anyone we were married."

(AR 1108–1117).  When USCIS afforded Schultz thirty days to produce evidence establishing the bona fides of her marriage to Gupta, Schultz failed to respond.[9]

---

[9]  Gupta points out numerous times that, although Schultz never responded to the NOID, he did.  However, it was not Gupta's burden to establish the bona fides of his marriage, but Schultz'.  *See Velez-Duenas*, 875 F. Supp. 2d at 1378.  Gupta's response to the NOID therefore has no effect on USCIS's final decision to deny Schultz' I-130 Petition.

Based on the above, USCIS's finding that Schultz could not carry her burden of establishing that her marriage to Gupta was bona fide is supported by substantial evidence in the Administrative Record.  The timing and manner of the marriage is suspicious, as Schultz and Gupta claim to have met, courted, and married within a period of about one week.  Schultz and Gupta never provided evidence of cohabitation and the vast majority of documentation and testimony produced to USCIS confirms separate residences during the onset of their marriage.  Moreover, Schultz never shared her marriage with her family or friends and asked Gupta to conceal their marriage from everyone.  Finally, Schultz failed to produce any evidence that she and Gupta even remotely shared a life together.  Given the deference the Court affords to USCIS in reaching its decision, the Court concludes it was reasonable for USCIS to find that Shultz and Gupta had married not in good faith, but for purposes of circumventing U.S. immigration laws.  USCIS's decision is therefore not arbitrary or capricious and is supported by substantial evidence in the Administrative Record.  Gupta's fifth objection will be overruled.

### 7.    Denial of Schultz' I-130 Petition Based on Abandonment

Gupta's sixth objection asserts that USCIS erred in determining that Schultz had abandoned her I-130 Petition.  (Doc. 98, pp. 8–10).  Due to the Court's conclusion that USCIS did not arbitrarily or capriciously deny Schultz' I-130 Petition based on marriage fraud, the Court accepts the Magistrate Judge's recommendation that it does not need to reach the issue of whether Schultz abandoned her I-130 Petition.  Gupta's sixth objection is accordingly overruled.

###### 8.  Whether USCIS's Denial of Schultz' I-130 Petition was in Accordance with the Law

Lastly, Gupta's seventh objection contends that USCIS improperly denied Schultz' I-130 Petition and Gupta's I-485 Application based partly upon inquiries into their sex life. (Doc. 98, pp. 8–10).  Gupta premises his challenge on Schultz' constitutional rights to due process and to be free from invasions into her marital privacy.[10]

While the Magistrate Judge assumed without deciding that Gupta has standing to raise constitutional claims on behalf of Schultz, the undersigned modifies the Report and Recommendation to include a finding that he does not.  Generally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Even where the plaintiff's injuries are similar in kind to those suffered by others, he may only seek relief for his own injuries.  *See id.*  Therefore, absent special circumstances which are not present in this case, Gupta cannot raise constitutional claims on Schultz' behalf.

Moreover, even if Gupta did have standing to assert Schultz' due process and marital privacy rights, Gupta fails to create any genuine factual dispute.  First, Gupta produces no affirmative evidence in support of his claim that Defendants violated Schultz' constitutional right to marital privacy by "threatening, harassing and abusing [Schultz]." (Doc. 95, p. 13).  Second, the Administrative Record reveals that Defendants adhered to the statutory and regulatory due process requirements.  Specifically, "[t]he regulations

---

[10]  Although Gupta originally pleaded that Defendants violated his constitutional rights as well (Doc. 1, ¶¶ 40–42), Gupta only raised Schultz' constitutional rights in response to Defendants' Amended Motion for Summary Judgment (Doc. 95, pp. 12–13).  Gupta is deemed to have waived claims or issues not raised before the Magistrate Judge.  *See Farrow v. West*, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003).  The Court therefore limits its analysis solely to claims asserted on behalf of Schultz.

only require that a petitioner be advised of the derogatory information that will be used to deny the [I-130] petition and be given the opportunity to respond." *Diaz*, 499 F. App'x 853, 856 (citing 8 C.F.R. § 103.2(b)(16)(i)).   USCIS complied with this requirement by providing Schultz with a detailed explanation in its NOID for why it intended to deny her I-130 Petition.   (AR 1108–1117).   USCIS not only mailed the NOID to Schultz, it also mailed a copy to Gupta to ensure he would be able to contact Schultz regarding the content of the NOID if necessary.   (*See* AR 1108).   Finally, USCIS advised Schultz that she had thirty days to respond to the NOID or else her I-130 Petition would be denied. (AR 1117).   This was all the due process to which Schultz was entitled.   As a result, USCIS acted in accordance with the law and Gupta's seventh objection will be overruled.

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's objections to the Magistrate Judge's April 10, 2015 Order denying Plaintiff's motion for contempt and to the Magistrate Judge's April 10, 2015 Order lifting the Court's stay of the summary judgment deadlines (Doc. 79) are **OVERRULED**.

2. Plaintiff's objection to the Magistrate Judge's May 5, 2015 Order denying Plaintiff's motion for leave to file motion for compliance (Doc. 85) is **OVERRULED**.

3. Plaintiff's objection to the Magistrate Judge's May 11, 2015, Order denying Plaintiff's motion to stay (Doc. 88) is **OVERRULED**.

4. Plaintiff's objection to the Magistrate Judge's Report and Recommendation (Doc. 98) is **OVERRULED**.

5. The Report and Recommendation filed July 7, 2015 (Doc. 97) is **MODIFIED** to include a finding that Plaintiff lacks standing to assert alleged constitutional injuries suffered by non-party Laura Schultz. The Report and Recommendation (Doc. 97) is otherwise **ADOPTED AND CONFIRMED** and made a part of this Order.

6. Defendants' Amended Motion for Summary Judgment (Doc. 66) is **GRANTED**. The final decision of the United States Citizenship and Immigration Services to deny Laura Schultz' I-130 Petition and Plaintiff's I-485 Application is **AFFIRMED**.

7. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and to close the file.

8. The Clerk of Court is further **DIRECTED** to serve a copy of this Order on Plaintiff by regular mail and certified mail.

**DONE AND ORDERED** in Orlando, Florida on September 25, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

The Honorable Magistrate Judge
Counsel of Record
*Pro se* Plaintiff